IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal Case No. 17-cr-00267-LKG |
| | ) |
| JOSHUA JERMAINE JACKSON, *et al*., | ) Dated:  December 18, 2024 |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER ON
THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**

**I.    INTRODUCTION**

The Defendant, William David Hill, has moved for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, upon the ground that the Government did not put forward sufficient evidence during its case-in-chief to prove his guilt beyond a reasonable doubt for any of the Counts of the Superseding Indictment.  ECF No. 167.  The motion is fully briefed.  ECF Nos. 167, 278, 283, 359 and 364.  The Court held a hearing on the motion on February 29, 2024.  ECF No. 343.  For the reasons that follow, the Court **DENIES** Mr. Hill's motion for judgment of acquittal.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

As background, on September 26, 2018, a Grand Jury sitting in the District of Maryland returned a Superseding Indictment, charging Mr. Hill and his two co-Defendants, Joshua Jermaine Jackson and Ronnell Francis Lewis, with: (1) Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Count I); (2) Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Counts II and IV); (3) Using, Carrying, Brandishing and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts III and V); (4) Felon in Possession

---

[1] The facts in this memorandum opinion and order are derived from the Superseding Indictment; Mr. Hill's memorandum in support of his motion for judgment of acquittal; the Government's response in opposition thereto; and the evidence presented during the trial.  ECF Nos. 75, 192, 193, 195, 196, 278, 283 and 359.

of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Count VI); and (5) Interstate Transportation of a Stolen Vehicle, in violation of 18 U.S.C. § 2312 (Count VII). ECF No. 75. The Government alleged that these offenses occurred between on or about November 22, 2016, and on or about November 26, 2016, in the District of Maryland and elsewhere. *Id*.

On January 9, 2019, Mr. Hill appeared before the Court for an arraignment, during which he pled not guilty to the offenses charged. ECF No. 96. An eight-day jury trial commenced on June 24, 2019, and concluded on July 3, 2019. ECF Nos. 133, 135, 136, 137, 140, 141 and 142. On July 3, 2019, a jury found Mr. Hill guilty of: (1) Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Count I); (2) Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Counts II and IV); (3) Using, Carrying, Brandishing and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts III and V); (4) Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Count VI); and (5) Interstate Transportation of a Stolen Vehicle, in violation of 18 U.S.C. § 2312 (Count VII).[2] ECF No. 148. Mr. Hill is currently awaiting sentencing.

## The Offenses

In this case, the Government alleged that Mr. Hill conspired with his two co-Defendants to commit two armed commercial robberies, which occurred over four days, during the week of Thanksgiving in 2016. ECF No. 283 at 3; *see* ECF No. 75. The Government also alleged that, after the second robbery, Mr. Hill and his co-Defendants used a stolen getaway car, before being apprehended by police along the border between Maryland and Washington, DC. ECF No. 283 at 7-8. In this regard, the Government argued that, following the second robbery, Mr. Hill's co-

---

[2] The Court severed the trial for Mr. Hill and co-Defendant Lewis from the trial for co-Defendant Jackson. As with Mr. Hill, on July 3, 2019, a jury found co-Defendant Lewis guilty of all Counts for which he was charged in the Superseding Indictment. ECF No. 148. Following a two-week jury trial, on February 18, 2020, a jury found co-Defendant Jackson guilty of: (1) Conspiracy to Interfere with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Count I); (2) Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a) (Count IV); (3) Using, Carrying, Brandishing and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count V); (4) Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) (Count VI); and (5) Interstate Transportation of a Stolen Vehicle, in violation of 18 U.S.C. § 2312 (Count VII). ECF No. 240. The jury acquitted co-Defendant Jackson of Count II, Interference with Interstate Commerce by Robbery, in violation of 18 U.S.C. § 1951(a), which related to the robbery of Rocky's Auto Shop that occurred on November 22, 2016, and therefore did not reach a verdict on the related 924(c) count (Count III). *Id*.

conspirators were caught by police, but Mr. Hill escaped on foot, though he left behind a gun with his hair wedged inside. ECF No. 359 at 3-4. The Government also argued that police recovered cell phones belonging to Mr. Hill's co-Defendants, which contained evidence that the co-Defendants planned and participated in the robberies with Mr. Hill. *Id*. at 4, 7-8.

### The Minivan Theft

The Government introduced evidence during the trial to show that, prior to committing two armed robberies, Mr. Hill and his co-Defendants took steps to prepare for these crimes by stealing a minivan. ECF No. 283 at 3-5; ECF No. 359 at 2. Specifically, the Government alleged that, on the morning of November 22, 2016, Lisa Myers, a woman living near Patterson Elementary School in Washington, DC, started her silver Dodge Caravan to warm it up before driving her children to school and went back inside. ECF No. 359 at 2; ECF No. 193 at 73:5-17; 76:1-3. But, when Ms. Myers returned, her vehicle was gone, because the Defendants had taken the minivan and fled the scene. ECF No. 359 at 2; ECF No. 193 at 76:1-15. The Government argued that the Defendants had stolen the vehicle and driven it to Hyattsville, Maryland, where they sought to locate license plates from a similar vehicle to steal. ECF No. 359 at 2. The Government also alleged that, after locating a similar minivan, the Defendants stole license plates from a vehicle owned by Luis Calderon Velasquez, and affixed them to the stolen minivan. *Id*.; ECF No. 193 at 100:6-14. Thereafter, the Defendants drove the stolen minivan to the area near Rocky's Auto Shop, located in Clinton, Maryland, to survey the business. ECF No. 359 at 2.

### The Auto Shop Robbery

The Government introduced evidence during the trial to show that, on November 22, 2016, at approximately 6:30 p.m., Aaron Ford, the owner of Rocky's Auto Shop, and his friend, Troy Contee, were waiting for a client to pick up her car before they closed the business for the day. ECF No. 283 at 5. While they waited, the Defendants approached Rocky's Auto Shop in the stolen minivan and jumped out with guns drawn. *Id*.; ECF No. 193 at 111:17-112:24; 126:1-11. The Defendants then brandished their guns at Mr. Ford and Mr. Contee, forcing them to hand over the money that was in their pockets. ECF No. 283 at 5; ECF No. 193 at 113:10-14.

The Defendants also grabbed Mr. Contee, held him at gunpoint, duct-taped his mouth and tied his hands and feet together with zip ties. ECF No. 283 at 5; ECF No. 193 at 114:9-14; 127:4-9. Believing the Defendants planned to execute him and Mr. Contee, Mr. Ford fought the

3

Defendants. ECF No. 283 at 5; ECF No. 193 at 116:5-23; 129:2-6. The Defendants shot Mr. Ford and fled the scene. ECF No. 283 at 5; ECF No. 193 at 130:9-13; 131:13-17. Mr. Ford was paralyzed due to his injuries. ECF No. 283 at 5. By the time Mr. Contee freed himself from the zip ties and duct tape to call 911, the Defendants had escaped. *Id*.

The Barbershop Robbery

The Government also introduced evidence during the trial to show that, four days later, on November 26, 2016, the Defendants robbed Joe's Old Fashion Barbershop, located in Seat Pleasant, Maryland. ECF No. 359 at 2-3. In this regard, the Government argued that, at approximately 5:00 p.m. on November 26, 2016, the Defendants drove the stolen minivan into the barbershop's parking lot. *Id*. at 3; ECF No. 192 at 91:25-92:13; ECF No. 193 at 20:18-21:5. The Government also alleged that, as Daryl Davis and Danyil Lancaster prepared to close the barbershop for the day, Mr. Hill and co-Defendant Lewis went inside the barbershop with a gun, while co-Defendant Jackson remained in the minivan. ECF No. 359 at 3; ECF No. 192 at 91:25-92:13; ECF No. 193 at 20:18-21:5. The Government also argued that, after Mr. Hill and co-Defendant Lewis entered the barbershop, they pointed the gun at the barbers and forced them to lie on their stomachs, to steal their money and jewelry. ECF No. 359 at 3; ECF No. 192 at 93:21-94:4; ECF No. 193 at 21:12-25. After Mr. Hill and co-Defendant Lewis heard a car horn honk, they fled the barbershop, ran into the waiting minivan and drove away. ECF No. 359 at 3; ECF No. 192 at 94:2-4; 95:11-96:4.

At the time of the robbery, officers from the Seat Pleasant, Maryland Police Department were responding to a call near the barbershop. ECF No. 359 at 3; ECF No. 192 at 49:21-50:19. After one of the barbers called 911, the officers heard dispatch call out a report of an armed robbery over the radio. ECF No. 359 at 3; ECF No. 192 at 51:18-21. The officers spotted the stolen minivan a short distance away. ECF No. 359 at 3; ECF No. 192 at 52:9-54:18. And so, the officers activated their lights, attempted to pull over the minivan and gave chase when the minivan did not stop. ECF No. 359 at 3; ECF No. 192 at 54:18-55:11

During the chase, the stolen minivan violently hit a speed bump in a residential neighborhood, causing it to slow down quickly and come to a stop, at which point the occupants "bailed out of the vehicle" (the "Bailout Location) ECF No. 283 at 7; ECF No. 192 at 58:18-21. Co-Defendant Jackson exited the vehicle from the front driver's side, while co-Defendant Lewis and Mr. Hill attempted to flee from the Bailout Location on foot from the vehicle's passenger

side.  ECF No. 283 at 7-8; ECF No. 192 at 58:22-59:12.  The officers secured co-Defendant Jackson, who had been shot in the shoulder by one of the guns inside the minivan, and co-Defendant Lewis, who only managed to evade law enforcement for a few yards.  ECF No. 283 at 8; ECF No. 192 at 59:4-23.  Mr. Hill, however, was able to escape from the officers on the scene.  ECF No. 359 at 3.

After the officers secured the minivan and obtained a search warrant for its contents, they found two loaded guns, including one with a high-capacity magazine and one with a filed-off serial number, inside.  *Id*.; ECF No. 283 at 8-9; ECF No. 192 at 123:2-5.  One of the guns was recovered from the front driver's side floorboard, while the other was recovered from the front passenger's side floorboard.  ECF No. 283 at 8-9; ECF No. 192 at 123:2-5.  The officers also discovered a third loaded firearm within Mr. Hill and co-Defendant Lewis' escape path, which contained a hair that DNA evidence ultimately matched to Mr. Hill.  ECF No. 359 at 4; ECF No. 283 at 9; ECF No. 192 at 61:6-17.  Lastly, the officers recovered co-Defendant Lewis' cell phone from his pocket and co-Defendant Jackson's two cell phones from his person.  ECF No. 283 at 9.

<u>The Trial Evidence</u>

An eight-day jury trial was held in this matter between June 24, 2019, and July 3, 2019.  ECF Nos. 133, 135, 136, 137, 140, 141 and 142.  During the trial, the Government presented the following evidence related to Mr. Hill and the November 22, 2016, minivan theft:

- **Eyewitness Testimony** – Lisa Myers, owner of the silver Dodge Caravan, testified that, on the morning of November 22, 2016, her minivan was stolen.  ECF No. 193 at 73:3-76:15.  Luis Calderon Velasquez also testified at trial that his license plates were stolen on November 22, 2016.  *Id*. at 99:24-100:22.

- **Video and Recovery of the Van** – Evidence obtained by law enforcement corroborated Ms. Myers' and Mr. Calderon Velasquez's testimony.  Security footage introduced at trial showed that, after the minivan was stolen, it followed a black Range Rover, which was owned, registered and driven by co-Defendant Jackson.  ECF No. 359 at 7.  Law enforcement also recovered the minivan after the high-speed pursuit on November 26, 2016.  *Id*.  Ms. Myers confirmed that the vehicle recovered at the Bailout Location was hers.  ECF No. 193 at 78:10-80:22.

- **Cell Site and Call Record Evidence** – Following the high-speed pursuit on November 26, 2016, officers recovered cell phones belonging to co-Defendants Lewis and Jackson.  ECF No. 283 at 9.  Information revealed in the subsequent searches of the contents of these phones and records from T-Mobile showed that, on the morning of November 22, 2016, phones belonging to all three Defendants— including Mr. Hill—used cell phone towers in the vicinity of the location of the minivan theft.  ECF No. 195 at 48:10-24.  Later that same morning, the three

5

Defendants' phones all connected to cell phone towers in the vicinity of the location of the license plate theft in Hyattsville, Maryland. *Id*. at 51:24-52:21. The Government also demonstrated at trial that co-Defendant Jackson and co-Defendant Lewis both called 202-836-5714, a phone number associated with Mr. Hill, to contact him.[3] *Id*. at 40:8-15.

The Government also presented the following evidence related to Mr. Hill and the November 22, 2016, robbery of Rocky's Auto Shop:

- **Eyewitness Testimony** – Mr. Ford testified during the trial regarding his experience during the armed robbery of Rocky's Auto Shop. *See* ECF No. 193 at 105-123. In his testimony, Mr. Ford detailed how a friend of co-Defendant Lewis named Dave became upset with Mr. Ford, following a dispute over Mr. Ford's work on Dave's vehicle. *Id*. at 109:5-111:16. On November 15, 2016, Dave came to Rocky's Auto Shop and threatened Mr. Ford. *Id*. at 111:1-12. Approximately one week after receiving these threats, on November 22, 2016, Mr. Ford testified that three men came to Rocky's Auto Shop at the end of a workday. *Id*. at 111:17-112:1. Mr. Ford testified that these men ordered him and Mr. Contee to empty their pockets, brandished firearms, tied up Mr. Contee, told Mr. Ford to get on his knees, demanded the contents of a safe that did not exist and threatened to shoot Mr. Contee if Mr. Ford did not cooperate. *Id*. at 113:10-116:7. Mr. Ford admitted that he was unable to identify his attackers in photograph arrays that police officers showed him while he recovered from his gunshot wounds. *Id*. at 118:15-23.

- **Eyewitness Testimony** – Mr. Contee also testified during the trial regarding his experience during the armed robbery of Rocky's Auto Shop. *See id*. at 124-173. Mr. Contee confirmed that three men came to Rocky's Auto Shop on November 22, 2016, and brandished firearms while demanding money. *Id*. at 126:3-22. He further explained that one robber was wearing a mask, one was "a little short and stocky" and wearing "a gray hoodie" and one was "a dark-skinned guy with a gray-black beard" who was "older" than the other robbers. *Id*. at 127:1-15, 128:1-5, 131:24-132:7. The latter description matches Mr. Hill. ECF No. 359 at 9. Mr. Contee also testified that the robbers approached Rocky's Auto Shop in a minivan, which he identified as a Dodge Caravan. *Id*. at 135:21-136:7. As part of the investigation into the armed robbery, Mr. Contee was shown two photo arrays. *Id*. at 136:8-141:2. He identified two individuals on separate days as those who brandished firearms at Rocky's Auto Shop during the November 22, 2016, robbery. *Id*.

---

[3] Co-Defendants Jackson and Lewis had the contact names "old man" and "Tank" associated with the -5714 number, respectively, in their phones. ECF No. 359 at 8. Co-Defendant Lewis also had a second number for "Tank" that matched Mr. Hill's phone on record with his employer. *Id*. The Government established at trial that "Tank" and "old man" were nicknames for Mr. Hill. *Id*. Cell site evidence for the -5714 number also shows that the number was in contact with the cell phone tower closet to the Safeway at 415 14th Street SE, in Washington, DC, where Mr. Hill worked, during Mr. Hill's working hours on the days surrounding the robberies. ECF No. 195 at 29:10-23.

6

- **Cell Site and Call Record Evidence** – Using information obtained from T-Mobile, Special Agent Matthew Wilde, a Federal Bureau of Investigations ("FBI") expert in the field of historical cell record analysis and cellular record technology, testified about cell site evidence regarding the various phones used by the Defendants. *See* ECF No. 195 at 9-89. Special Agent Wilde concluded that between 1:13 p.m. and 2:14 p.m. on November 22, 2016, all three Defendants' cell phones connected to cell phone towers in the same Clinton, Maryland, area where Rocky's Auto Shop is located, consistent with the Defendants staking out the business prior to robbing it later that day. *Id*. at 53:19-56:9. He also concluded that at 6:33 p.m. on November 22, 2016, the time of the robbery, neither Mr. Hill's cell phone, nor co-Defendant Lewis' cell phone, recorded contacts with any cell towers, suggesting they were turned off. *Id*. at 56:10-57:16. Agent Wilde further testified about the constant communication among the Defendants in the weeks leading up to and including the robberies. *Id*. at 39:15-40:18. Lastly, Agent Wilde testified that on the morning of November 24, 2016, the Defendants' cell phones all connected to the same cell tower in the area of Mr. Hill's home, located in Southeast Washington, DC. *Id*. at 63:19-64:12.

Lastly, the Government presented the following evidence related to Mr. Hill and the November 26, 2016, robbery of Joe's Old Fashion Barbershop:

- **Eyewitness Testimony** – Mr. Davis testified during the trial regarding his experience during the armed robbery of Joe's Old Fashion Barbershop. *See* ECF No. 192 at 88-119. During his testimony, Mr. Davis described the two robbers, noting that one robber "was lighter skinned, a little heavier set" while the other "was slim, dark skin." *Id*. at 92:5-20. The former description matches co-Defendant Lewis, while the latter description matches Mr. Hill. ECF No. 359 at 11.

- **Eyewitness Testimony** – Mr. Lancaster also testified during the trial regarding his experience during the armed robbery of Joe's Old Fashion Barbershop. ECF No. 193 at 18-55. Mr. Lancaster corroborated Mr. Davis' recollections and his descriptions of the robbers matched those offered by Mr. Davis, including the fact that one robber was lighter skinned and heavier set, while the other was slimmer and had a darker complexion. *Id*. at 34:12-35:8. Mr. Lancaster also testified to the fact that he identified Mr. Hill from a photo array approximately one year after the robbery took place. *Id*. at 36:14-37:17.

- **The Pursuit and Recovered Forensic Evidence** – After the robbery of Joe's Old Fashion Barbershop, officers from the Seat Pleasant, Maryland Police Department spotted the fleeing minivan and gave chase. ECF No. 359 at 3. The minivan violently hit a speed bump, causing it to slow down quickly and come to a stop. ECF No. 283 at 7. The officers found co-Defendants Jackson and Lewis at or near the scene, as well as two loaded guns inside the van, one with a high-capacity magazine and the other with a filed-off serial number. *Id*. at 8-9. The officers also found a third loaded firearm within Mr. Hill and co-Defendant Lewis' escape path, which contained a hair. ECF No. 359 at 4; ECF No. 283 at 9. Constance Fisher, a biologist forensic examiner with the DNA Casework Unit in the FBI's Laboratory Division,

    testified during trial that the DNA wedged in the firearm was a 2,700,000,000,000,000,000,000,000,000:1 likelihood of a match with Mr. Hill's DNA.  ECF No. 196 at 97:24-98:22.

- **Cell Site Evidence** – Cell site records showed that the Defendants' phones all pinged together near the Bailout Location when the Defendants attempted to escape the officers pursuing them after the Joe's Old Fashion Barbershop Robbery.  ECF No. 195 at 65:4-20.  Specifically, cell site records show that Mr. Hill's cell phone appeared to slowly move from the area around the Bailout Location at the Maryland-Washington, DC, border back to his home at 1626 28th Street SE, in Washington, DC.  *Id*. at 44:15-45:6.  At trial, Agent Wilde presented a chart showing these movements between 4:47 p.m. and 7:18 p.m. on November 26, 2016.  *Id*.

  During the trial, Mr. Hill introduced the testimony of his sister, Audrey Hicks, who testified that over the previous ten years, Mr. Hill would occasionally stay with her at her residence, located at 3114 M Place SE, Washington, DC.  ECF No. 196 at 144:16-145:4.  Ms. Hicks also testified that she could not recall where Mr. Hill was on November 22, 2016, or November 26, 2016.  *Id*. at 147:6-12.  But, Ms. Hicks testified that she remembered that Mr. Hill worked at Safeway during this time period.  *Id*. at 147:13-17.

  Mr. Hill also argued that a personal acquaintance of his is the real possessor of the cell phone that the Government attributed to him and that any location data or conversations attached to the number for that cell phone could not be attributed to him.  *Id*. at 122:10-17.  In addition, Mr. Hill argued that the DNA evidence linking him to the gun recovered near the Bailout Location following the Joe's Old Fashion Barbershop robbery did not connect him to that robbery, because his DNA could have been transferred to the gun at any time.  *Id*. at 126:16-127:7.  And so, Mr. Hill argued that the Government could not prove that Mr. Hill was in the van with his co-Defendants after the Joe's Old Fashion Barbershop robbery.  *Id*. at 127:3-5.  Lastly, Mr. Hill argued that it was impossible for him to flee from police officers following the Joe's Old Fashion Barbershop robbery, because he was 61 years old at the time of the robbery.  ECF No. 197 at 126:14-16.

The Court's Jury Instructions

  Following the presentation of evidence, the Court instructed the jury that there were two alternative bases of liability for which the jury could find Mr. Hill guilty of the substantive counts with which he had been charged.  *Id*. at 14-78.  First, the Court instructed the jury that, should Mr. Hill be found guilty of the overall conspiracy charged in Count I of the Superseding Indictment, the jury "may also, but [was] not required to, find him guilty of" the other crimes

with which he was charged. *Id*. at 73:2-7.  To do so, the Court instructed the jury that it needed to find:

> First, that the crime charged in the substantive count was committed; second, that the person or persons [the jury] find actually committed the crime were members of the conspiracy [the jury] found to have existed; third, that the substantive crime was committed pursuant to the common plan and understanding [the jury] found to exist among the conspirators; fourth, that the defendant was a member of that conspiracy at the time the substantive crime was committed; [and] fifth, that the defendant could have reasonably foreseen that the substantive crime might be committed by his co-conspirators.

*Id*. at 73:13-22.

Second, the Court instructed the jury that Mr. Hill could be found guilty on those counts, if the jury found "beyond a reasonable doubt that the Government has proved that another person actually committed the offense with which [he was] charged and that [Mr. Hill] aided or abetted that person in the commission of the offense," because Mr. Hill was charged with aiding and abetting his co-Defendants in Counts II, III, IV, V, VI and VII.  *Id*. at 75:16-21.  On July 3, 2019, a jury found Mr. Hill guilty of all Counts for which he was charged in the Superseding Indictment.  ECF No. 148.

Following his conviction, Mr. Hill filed a motion for judgment of acquittal, pursuant to Fed. R. Crim. P. 29, and a motion for new trial, pursuant Fed. R. Crim. P. 33.  ECF Nos. 167, 278.  The Government filed a response in opposition to these motions on May 14, 2021.  ECF No. 283.

The Court held a hearing on these motions on February 29, 2024, during which the Court denied Mr. Hill's motion for a new trial.  ECF Nos. 343, 348.  Thereafter, the parties submitted supplemental briefs on the Defendant's motion for judgment of acquittal, on March 19, 2024, and March 28, 2024, respectively.  ECF Nos. 359, 364.  The Defendant's motion for judgment of acquittal having been fully briefed, the Court resolves the pending motion.

### III.   STANDARDS FOR DECISION

#### A.   Rule 29

Federal Rule of Criminal Procedure 29(a) permits a defendant to seek a judgment of acquittal at the close of the Government's case-in-chief "or after the close of all evidence," while Rule 29(c) provides that a defendant can move for acquittal or renew a prior motion "within 14

days after a guilty verdict." Fed. R. Crim. P. 29; *see United States v. Watkins*, 111 F.4th 300, 307 (4th Cir. 2024). When ruling on such a motion, the Court must determine whether substantial evidence exists to support the jury's guilty verdict beyond a reasonable doubt. *United States v. McLean*, 715 F.3d 129, 137 (4th Cir. 2013). The Court may grant a motion for judgment of acquittal only if the "evidence is so deficient that acquittal is the '*only* proper verdict.'" *United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023) (quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982)) (emphasis in original); *see also United States v. Smith*, 2023 WL 8618539, at *8 (4th Cir. Dec. 13, 2023). And so, the Court "reviews whether there is substantial evidence to support the jury verdict," such that, "to reverse, the record must demonstrate a lack of evidence from which a jury could find guilt beyond a reasonable doubt." *United States v. Tillmon*, 954 F.3d 628, 637 (4th Cir. 2019) (cleaned up).

In weighing the evidence, the Court must resolve all testimonial conflicts and draw all reasonable inferences in the light most favorable to the Government. *United States v. MacCloskey*, 682 F.3d 468, 473 (4th Cir. 1982); *United States v. Elfenbein*, 708 F. Supp. 3d 621, 655 (D. Md. 2023); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Court must also consider both circumstantial and direct evidence when deciding such a motion. *United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008).

### IV.    ANALYSIS

Mr. Hill has moved for judgment of acquittal, pursuant to Fed. R. Crim. P. 29, upon the ground that the Government did not present sufficient evidence at trial to establish beyond a reasonable doubt that he participated in the robberies of Rocky's Auto Shop and Joe's Old Fashion Barbershop. ECF Nos. 167, 278, 364. In this regard, Mr. Hill argues that: (1) eyewitnesses were unable to conclusively identify him as a participant in the robberies; (2) testimony about his cell site data did not place him or his cell phone at the specific locations of the robberies; and (3) the DNA evidence connecting him to the loaded gun recovered near the Bailout Location following the robbery of Joe's Old Fashion Barbershop do not connect him to the robberies. ECF No. 278 at 5-11; ECF No. 364 at 3-5. Given this, Mr. Hill argues that no rational trier of fact could conclude that he was involved in these robberies and that the verdicts related to these crimes are not supported by substantial evidence. ECF No. 278 at 11; ECF No.

364 at 7. And so, Mr. Hill requests that the Court enter judgments of acquittal as to all Counts for which the jury found him guilty.[4] ECF No. 278 at 11; ECF No. 364 at 7.

The Government counters in its responses in opposition to Mr. Hill's motion that the eyewitness testimony, cell phone evidence and forensic evidence presented at trial sufficiently established Mr. Hill's identity and participation in the conspiracy alleged in the Superseding Indictment. ECF Nos. 283, 359. In this regard, the Government argues that: (1) the eyewitness testimony shows that the Rocky's Auto Shop and Joe's Old Fashion Barbershop robberies followed a similar *modus operandi* conducted by men of the same physical characteristics; (2) the cell phone evidence shows Mr. Hill and his co-Defendants together during the theft of the minivan, during the theft of the licenses plates, staking out Rocky's Auto Shop prior to the robbery, at Mr. Hill's home on a day in between the two robberies and at the Bailout Location following the robbery of Joe's Old Fashion Barbershop; and (3) the forensic evidence matched the hair recovered from one of the firearms discovered at the Bailout Location with Mr. Hill's DNA. ECF No. 359 at 17-19.

In addition, the Government argues that the evidence also supports the jury's findings of guilt on Counts II and VII of the Superseding Indictment, because Mr. Hill aided and abetted the substantive criminal acts, or he is liable for the acts of his co-Defendants, under a *Pinkerton* liability theory. *Id*. at 19. Given this, the Government argues that a rational trier of fact could find that Mr. Hill was the third robber at Rocky's Auto Shop, because the evidence shows that this robbery was a part of a three-person conspiracy and that Mr. Hill was present during the preparatory acts for that robbery. *Id*. And so, the Government requests that the Court deny Mr. Hill's motion. *Id*. at 20.

For the reasons that follow, the evidence before the Court shows that the Government presented sufficient evidence at trial for a reasonable jury to find that Mr. Hill committed the crimes alleged in the Superseding Indictment. And so, the Court DENIES Mr. Hill's motion for judgment of acquittal.

---

[4] In Mr. Hill's supplemental briefing on his motion for judgment of acquittal, Mr. Hill requests that the Court enter judgments of acquittal with respect to Counts I, II and III of the Superseding Indictment. ECF No. 359 at 7. But, the Court construes his original motion to seek judgments of acquittal with respect to all Counts for which the jury found him guilty. *See* ECF Nos. 167, 278.

11

**A. The Court Denies The Defendant's Motion For Judgment Of Acquittal**

While a somewhat close question, the Court is satisfied that the evidence regarding Mr. Hill's involvement and participation in the conspiracy alleged in this case, when viewed in the light most favorable to the Government, is sufficient to support his convictions with respect to all Counts for which he was charged in the Superseding Indictment.

To prevail on his motion for judgment of acquittal, Mr. Hill must show the absence of substantial evidence to support the jury's verdict beyond a reasonable doubt. *United States v. McLean*, 715 F.3d 129, 137 (4th Cir. 2013). In weighing the evidence, the Court must resolve all testimonial conflicts and draw all reasonable inferences in the light most favorable to the Government. *United States v. MacCloskey*, 682 F.3d 468, 473 (4th Cir. 1982); *United States v. Elfenbein*, 708 F. Supp. 3d 621, 655 (D. Md. 2023); *accord Jackson v. Virginia*, 443 U.S. 307, 319 (1979). And so, the Court may grant a motion for judgment of acquittal only if the "evidence is so deficient that acquittal is the '*only* proper verdict.'" *United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023) (quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982)) (emphasis in original); *see also United States v. Smith*, 2023 WL 8618539, at *8 (4th Cir. Dec. 13, 2023).

In this case, Mr. Hill argues that the Government's evidence at trial was insufficient to connect him to the two robberies at issue, because: (1) eyewitnesses were unable to conclusively identify him as a participant in the robberies; (2) testimony about his cell site data did not place him or his cell phone at the specific locations of the robberies; and (3) the DNA evidence connecting him to the loaded gun recovered near the Bailout Location following the robbery of Joe's Old Fashion Barbershop does not connect him to the robberies. ECF No. 278 at 5-11; ECF No. 364 at 3-5. With regards to the robbery of Rocky's Auto Shop, Mr. Hill also argues that the Government's evidence was insufficient at trial, because: (1) Mr. Ford did not identify him as a perpetrator of the robbery; (2) Mr. Contee's descriptions of the robber that the Government alleged was Mr. Hill do not match his physical characteristics; and (3) Mr. Contee never conclusively identified Mr. Hill as a robber from a photo array. ECF No. 364 at 3-5.

The Court observes, as an initial matter, that the evidence connecting Mr. Hill to the robbery of Rocky's Auto Shop is largely circumstantial. In this regard, the evidence introduced by the Government at trial is as follows:

- **Eyewitness Testimony** – Mr. Ford testified during the trial regarding his experience during the armed robbery of Rocky's Auto Shop. *See* ECF No. 193 at 105-123. In his testimony, Mr. Ford detailed how a friend of co-Defendant Lewis named Dave became upset with Mr. Ford, following a dispute over Mr. Ford's work on Dave's vehicle. *Id*. at 109:5-111:16. On November 15, 2016, Dave came to Rocky's Auto Shop and threatened Mr. Ford. *Id*. at 111:1-12. Approximately one week after receiving these threats, Mr. Ford testified that three men came to Rocky's Auto Shop at the end of a workday. *Id*. at 111:17-112:1. Mr. Ford testified that these men ordered him and Mr. Contee to empty their pockets, brandished firearms, tied up Mr. Contee, told Mr. Ford to get on his knees, demanded the contents of a safe that did not exist and threatened to shoot Mr. Contee if Mr. Ford did not cooperate. *Id*. at 113:10-116:7. Mr. Ford admitted that he was unable to identify his attackers in photograph arrays that police officers showed him while he recovered from his gunshot wounds. *Id*. at 118:15-23.

- **Eyewitness Testimony** – Mr. Contee also testified during the trial regarding his experience during the armed robbery of Rocky's Auto Shop. *Id*. at 124-173. Mr. Contee confirmed that three men came to Rocky's Auto Shop on November 22, 2016, and brandished firearms while demanding money. *Id*. at 126:3-22. He further explained that one robber was wearing a mask, one was "a little short and stocky" and wearing "a gray hoodie" and one was "a dark-skinned guy with a gray-black beard" who was "older" than the other robbers. *Id*. at 127:1-15, 128:1-5, 131:24-132:7. The latter description matches Mr. Hill. ECF No. 359 at 9. Mr. Contee also identified that the robbers approached Rocky's Auto Shop in a minivan, which he identified as a Dodge Caravan. *Id*. at 135:21-136:7. As part of the investigation into the armed robbery, Mr. Contee was shown two photo arrays. *Id*. at 136:8-141:2. He identified two individuals on separate days as those who brandished firearms at Rocky's Auto Shop during the November 22, 2016, robbery. *Id*.

- **Cell Site and Call Record Evidence** – Using information obtained from T-Mobile, Special Agent Wilde, testified about historical cell site evidence regarding the various phones used by the Defendants. *See* ECF No. 195 at 9-89. Special Agent Wilde concluded that between 1:13 p.m. and 2:14 p.m. on November 22, 2016, all three Defendants' cell phones connected to cell phone towers in the same Clinton, Maryland, area where Rocky's Auto Shop is located, consistent with the Defendants staking out the business prior to robbing it later that day. *Id*. at 53:19-56:9. He also concluded that at 6:33 p.m. on November 22, 2016, the time of the robbery, neither Mr. Hill's cell phone, nor co-Defendant Lewis' cell phone, recorded contacts with any cell towers, suggesting they were turned off. *Id*. at 56:10-57:16. Agent Wilde further testified about the constant communication among the Defendants in the weeks leading up to and including the robberies. *Id*. at 39:15-40:18. Lastly, Agent Wilde testified that on the morning of November 24, 2016, the Defendants' cell phones all connected to the same cell tower in the area of Mr. Hill's home, located in Southeast Washington, DC. *Id*. at 63:19-64:12.

As Mr. Hill correctly observes, there is no eyewitness testimony that places him at the scene of the Rocky's Auto Shop robbery. ECF No. 364 at 3-5. But, other evidence does connect Mr. Hill to this crime.

Notably, Special Agent Wilde testified at trial that the cell phone evidence shows that, between 1:13 p.m. and 2:14 p.m. on November 22, 2016, all three Defendants' cell phones connected to cell phone towers in the same area of Clinton, Maryland, where Rocky's Auto Shop is located. ECF No. 195 at 53:19-56:9. This evidence is consistent with the Defendants staking out Rocky's Auto Shop prior to robbing the business later that day. Special Agent Wilde also testified that at 6:33 p.m. on November 22, 2016, which is the time of the robbery, neither Mr. Hill's cell phone, nor co-Defendant Lewis' cell phone recorded contacts with any cell towers, suggesting the phones were turned off during the robbery. *Id*. at 56:10-57:16. And so, while circumstantial, this evidence is sufficient for the jury to find that Mr. Hill staked out Rocky's Auto Shop and conspired with his co-Defendants to commit the Rocky's Auto Shop robbery.

The Government also presented other evidence to connect Mr. Hill with his co-Defendants and to show that Mr. Hill conspired with co-Defendant Jackson and co-Defendant Lewis to commit the offenses alleged in the Superseding Indictment. In this regard, the Government introduced evidence at trial to show that Mr. Hill participated in certain preparatory acts related to the Rocky's Auto Shop robbery. During the trial, Lisa Myers testified that, on the morning of November 22, 2016, mere hours before the robbery of Rocky's Auto Shop, her minivan was stolen from her home near Patterson Elementary School in Washington, DC. ECF No. 193 at 73:3-76:15. Security footage introduced at trial shows that, after the minivan was stolen, it followed a black Range Rover, which was owned, registered and driven by co-Defendant Jackson. ECF No. 359.

The cell phone evidence presented at trial also shows that cell phones belonging to all three Defendants used cell phone towers located in the vicinity of the location of the minivan theft. ECF No. 195 at 48:10-24. And so, when viewed in the light most favorable to the Government, the Court is satisfied that there is substantial evidence to connect Mr. Hill to the Rocky's Auto Shop robbery and to support the jury's guilty verdict.

The evidence before the Court also connects Mr. Hill to the robbery of Joe's Old Fashion Barbershop on November 26, 2016. Notably, Daryl Davis testified during trial about the

descriptions of the two men who robbed the barbershop, and he observed that one robber "was lighter skinned, a little heavier set" while the other "was slim, dark skin." ECF No. 192 at 92:5-20. Danyil Lancaster corroborated Mr. Davis' descriptions of the robbers. ECF No. 193 at 34:12-35:8. Mr. Lancaster also testified that he identified Mr. Hill as one of the robbers from a photo array approximately one year after the robbery took place. *Id*. at 36:14-37:17. While Mr. Hill argues that law enforcement unduly influenced Mr. Lancaster to make this identification, this argument is unsupported by the evidence before the Court. ECF No. 278 at 7-8. Given this, the jury appropriately weighed and credited Mr. Lancaster's eyewitness identification.

In addition to eyewitness testimony identifying Mr. Hill as one of the Joe's Old Fashion Barbershop robbers, cell site evidence introduced at trial by the Government shows that the Defendants' phones all pinged together near the Bailout Location. ECF No. 195 at 65:4-20. Specifically, cell site records showed that Mr. Hill's cell phone appeared to slowly move from the area around the Bailout Location at the Maryland-Washington, DC, border back to his home at 1626 28th Street SE, in Washington, DC. *Id*. at 44:15-45:6. Lastly, following the chase of the minivan, the evidence shows that officers recovered a loaded firearm, which contained a hair that is linked to Mr. Hill through forensic evidence. ECF No. 359 at 4; ECF No. 283 at 9. In this regard, forensic evidence introduced by the Government at trial shows that the hair recovered was a 2,700,000,000,000,000,000,000,000,000:1 likelihood of a match with Mr. Hill's DNA. ECF No. 196 at 97:24-98:22. And so, when viewing the evidence in the light most favorable to the Government, there is substantial evidence to show Mr. Hill's connection to the Joe's Old Fashion Barbershop robbery and to support the jury's guilty verdicts with regards to his involvement with that robbery.

In sum, the Court is satisfied that the evidence introduced by the Government during its case-in-chief at trial was sufficient to prove Mr. Hill's guilt beyond a reasonable doubt and to support the jury's guilty verdicts with respect to all Counts for which he was charged in the Superseding Indictment. For this reason, Mr. Hill has not shown that the "evidence is so deficient that acquittal is the '*only* proper verdict'" with respect to any Count. *Rafiekian*, 68 F.4th at 186 (quoting *Tibbs*, 457 U.S. at 42) (emphasis in original); *see also United States v. Smith*, 2023 WL 8618539, at *8 (4th Cir. Dec. 13, 2023). And so, the Court DENIES Mr. Hill's motion for judgment of acquittal.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendant's motion for judgment of acquittal (ECF No. 167).

    **IT IS SO ORDERED.**

                                               s/Lydia Kay Griggsby
                                               LYDIA KAY GRIGGSBY
                                               United States District Judge